*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0219p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                                    No. 09-2624

        *v.*

MICHAEL JUDGE,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 07-20625-015—Thomas L. Ludington, District Judge.

Argued: July 26, 2011

Decided and Filed: August 15, 2011

Before: BOGGS, GILMAN, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Frank E. Stanley, Grand Rapids, Michigan, for Appellant. Shane N. Waller, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee. **ON BRIEF:** Frank E. Stanley, Grand Rapids, Michigan, for Appellant. Shane N. Waller, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee.

_____

**OPINION**

_____

BOGGS, Circuit Judge. Michael Judge pleaded guilty to conspiracy to distribute the drug "ecstacy," in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court granted Judge a 24-month downward variance to account for his cooperation with the government, and sentenced Judge to 71 months of imprisonment. Judge appeals his sentence, arguing that the district court failed to consider what it should have—several

1

of his mitigating arguments—and, instead, considered what it should not have—the possibility of future sentence relief under Rule 35 of the Federal Rules of Criminal Procedure. For the reasons set forth below, we conclude that the record does not demonstrate that the district court committed any error, and we therefore affirm Judge's sentence.

I

On December 12, 2007, Judge was indicted along with fourteen others for conspiring to distribute and to possess with intent to distribute ecstacy,[1] in violation of 21 U.S.C. §§ 841(a)(1) and 846. On August 20, 2008, Judge was charged in a superseding indictment, which added four new defendants but no new charges.

On January 9, 2009, Judge entered into a plea agreement with the government. Judge agreed to plead guilty to count one of the single-count indictment and stipulate to the following:

> From about 2005 to December 2007, defendant agreed with one or more of his co-defendants to possess with intent to distribute and to distribute quantities of ecstasy in the Eastern District of Michigan and elsewhere. During this time frame, defendant participated directly and indirectly in the purchase and distribution of 78,000 ecstasy tablets, which is equivalent to approximately 8,970 kilograms of marijuana for purposes of determining defendant's offense level.

The parties agreed that the Guidelines range was 87–108 months in prison, and Judge waived his right to appeal his "conviction" if the court sentenced him within that range.[2]

On March 15, 2009, the district court accepted Judge's guilty plea. At the plea hearing, Judge explained that he received the ecstasy from two individuals and then gave

---

[1]Specifically, the indictment refers to "3,4-methylenedioxyamphetamine (MDA) and 3, 4-methylenedioxymethamphetamine (MDMA), both substances commonly known as ecstasy."

[2]The government filed a motion to dismiss this appeal pursuant to the plea agreement. In response, Judge argued that the plea agreement does not bar this appeal because he appeals only his *sentence*, not his *conviction*, which is the term used in the agreement. The government has since conceded that the plea agreement does not bar this appeal, and we need not address the issue any further. *See United States v. Phoenix*, 414 F. App'x 755, 758 (6th Cir. 2011) ("Because the government has conceded that the appeal waiver is invalid in the circumstances of this case, we deem the argument waived and consider the merits of [the] appeal.").

it to three others to distribute. Judge also confirmed that he was responsible for the distribution of 78,000 ecstasy tablets.

Prior to sentencing, a United States Probation Officer prepared a Presentence Report ("PSR"). The PSR calculated Judge's base offense level to be 34, and then subtracted two levels because Judge met the criteria for the Guidelines' "safety-valve" reduction, *see* USSG §5C1.2, and subtracted another three levels because Judge accepted responsibility, *see id.* §3E1.1. The PSR noted that Judge had no criminal history and accordingly placed him in criminal history category I. Based on Judge's total offense level of 29 and criminal history category of I, the PSR calculated his Guidelines range to be 87 to 108 months in prison. Neither Judge nor the government filed any objections to the PSR.

On September 22, 2009, Judge filed a motion for either a downward departure or a variance. The motion argued that Judge's was not a "heartland" case and pointed out that he had no prior criminal record, had maintained steady employment, and recognized the importance of education. The motion further noted that Judge had remained drug-free while out on bond, has overall lived an exemplary life while on bond, and posed no threat to public. The motion also indicated that Judge had provided substantial assistance to the government, which would be detailed at the time of sentencing, and that he was genuinely remorseful for his conduct. The motion did not request a sentence of a particular length, but rather asked only generally for a downward departure or variance.

In early December 2009, Judge obtained a new attorney, who continues to represent him on appeal. On December 11, 2009, Judge filed a supplemental motion for a variance, which included a half-page memorandum of law. Specifically, Judge sought a variance based on the substantial assistance that he had provided to the government, which he detailed in a supplemental filing, and he stated in the memorandum that the court is required to consider his request pursuant to *United States v. Blue*, 557 F.3d 682, 686 (6th Cir. 2009), and *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009).

Judge's sentencing hearing was on December 17, 2009. Early in the proceeding, the district court stated that it read *Blue* and *Petrus* to indicate that it had an obligation to consider the evidence of Judge's assistance to the government as part of the section 3553(a) sentencing factors, even though the government had not filed a motion under USSG §5K1.1 based on substantial assistance. The parties discussed that legal issue at length, as well as the scope of the assistance that Judge had provided. The government explained that it had not filed a 5K1.1 motion because the relevant investigations and Judge's assistance were both still ongoing, and it therefore could not yet evaluate what relief Judge would be entitled to. The government argued that, "[i]n theory, the defendant could show up at a trial and completely change his story and the cases could ultimately be dismissed which would negate any cooperation he has done." The government did, however, confirm that the information Judge had provided to the court about his assistance was, at the time of the hearing, accurate.

Next, Judge made four distinct arguments in favor of a lower sentence. First, Judge's counsel discussed at length the fact that Judge terminated his criminal conduct before he was caught by investigators. Second, counsel argued that Judge has a significant employment history, is a successful businessman, and has tried to better himself. Third, counsel noted that Judge previously had a substance-abuse problem, but has had no positive drug tests since being charged. Finally, both counsel and, to a greater extent, Judge himself argued that Judge fully accepted responsibility and was truly sorry for his conduct.

Finally, the district court explained its sentence. The court noted that the fact that Judge had stopped working to distribute drugs before being caught was a "significant" mitigating factor. The court went on to explain that, "on the other hand," Judge was involved in a substantial drug conspiracy that involved large amounts of controlled substances and was "involved not only in the distribution but also in the financing." The court further noted that, although Judge's entrepreneurial skills were impressive, it was how he employed those skills that got him into trouble to begin with. Next, the district judge explained to Judge that, "you've got to correct your behavior if you ultimately

want to accomplish things in life that I do believe you wish to do." The court explained that, having considered both the Guidelines and separately considered the section 3553(a) sentencing factors—except for Judge's cooperation, it would sentence Judge to 95 months in a prison that offers a comprehensive drug-treatment program. Finally, the court considered Judge's cooperation with the government. The court noted that Judge's cooperation was consistent with that in cases where it had given sentence reductions of 30 to 40 percent pursuant to 5K1.1 motions. However, the court explained that, "[i]n this case, the assistance [Judge] may provide the government may not be complete and certainly that is the point that's been advanced by the government . . . . For that reason that I agree with, I believe that a 25 percent reduction is warranted by reason of the application of the 3553(a) factors . . . ."[3] The court accordingly sentenced Judge to 71 months in prison.

After explaining the sentence, the district court asked counsel if he had "any questions or objections to the sentence that has not been previously risen [sic]?" Defense counsel responded that he had no objections, but asked the court to clarify whether its analysis of the section 3553(a) factors included Judge's cooperation. The court responded that it did include Judge's cooperation, and that it indeed had stated precisely how much credit it had given Judge for his cooperation. After directing the marshal to take Judge into custody that day, the court again asked defense counsel if he had "anything further." Counsel asked the court if it had indicated that it would recommend a substance-abuse treatment program for Judge, and the court responded in the affirmative. Counsel then asked the court if it would recommend that Judge be placed at the prison closest to his parents' home, and the court responded that it would do so. Finally, the court again asked defense counsel if he had anything further, and counsel responded that he did not.

---

[3]At oral argument, Judge suggested that it is not clear whether the district court considered his cooperation as part of the section 3553(a) factors. We cannot imagine how the district court could have indicated that it was doing so, and to what extent, with any greater level of clarity.

Judge filed his timely notice of appeal on December 23, 2009.  This court has jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. § 1291.

II

A

Sentences are generally reviewed for an abuse of discretion, but where a defendant asserts a procedural error on appeal that was not raised below when prompted by the district court in accordance with *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), our review is limited to determining whether the sentencing court committed plain error. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011).  The plain-error standard of review requires that the defendant show "(1) error (2) that was obvious or clear, (3) that affected the defendant's substantial rights[,] and (4) that affected the fairness, integrity, or public reputation of the proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal punctuation and citation omitted).

A district court must explain the sentence it has chosen, but it is well-settled that it is not required to respond to every argument raised by the defendant. *Id*. at 387.  For example, a district court need not respond to straightforward or frivolous arguments, particularly those that are legal—versus factual—in nature. *United States v. Simmons*, 587 F.3d 348, 361–62 (6th Cir. 2009).  Further, within-Guidelines sentences need not be explained with the same level of detail as non-Guidelines sentences. *Vonner*, 516 F.3d at 387.  The level of detail required in the court's explanation will vary from case to case, and the underlying inquiry is "whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances[,] and took them into account in sentencing him." *Ibid*. (internal punctuation and citation omitted).

B

Because Judge did not raise his inadequate-explanation argument before the district court, either in response to the court's *Bostic* question or earlier in the proceeding, we review the adequacy of the district court's explanation of its sentence under the plain-error standard of review. Judge asserts in his opening brief that his procedural argument is preserved because the district court "was presented with all of the reasons for a downward variance both before and during the sentencing proceeding." Appellant's Br. at 15. But presenting the district court with substantive arguments is not the same as making an objection to the district court's explanation of its consideration of those arguments. *See Vonner*, 516 F.3d at 386. It is thus clear that plain-error review applies to Judge's inadequate-explanation argument, and Judge conceded that much in his reply brief and at oral argument.

Judge mistakenly relies on *United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010), in which this court held that a sentencing judge committed plain error by failing to respond to the defendant's primary mitigating argument and imposing a sentence inconsistent with that argument. *See id.* at 803–04. Judge's primary argument at sentencing was that he deserved a lower sentence because of the substantial assistance he provided to the government. Judge filed a pre-hearing motion focused exclusively on this factor, and both the sentencing court and the parties discussed it at great length at the sentencing hearing. Indeed, Judge emphasized both in his reply brief and at oral argument that his primary focus was on that particular argument. The record clearly reflects that the district court thoroughly addressed the substantial-assistance argument, and Judge was in fact successful on that point, receiving a 25% reduction in his term of imprisonment. Therefore, *Wallace* does not reach this case.

Significantly, many of the arguments that Judge claims the district court ignored are, in context, inseparable from those that the court clearly considered. For example, at sentencing, Judge argued that he has a substantial employment history and has worked to better himself as a businessman. The district court was not impressed by that argument, explaining that it was Judge's use of his skills as a businessman that caused

the trouble he was in to begin with. That explanation sufficiently discharged any obligation of the district court to respond to the employment argument. *See United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010) (holding that a district court adequately responded to an argument by briefly stating why it was unpersuasive).

On appeal, however, Judge attempts to count each statement that he made in support of his employment argument as an independent argument, and he argues that the district court erred by failing to respond to *those* "arguments." Of the six or seven[4] arguments that Judge argues that the district court ignored, two were presented as components of the employment argument that the district court clearly did consider: first, that Judge "underst[ands] the importance of an education . . . [and] has used his education to improve his employment opportunities," and, second, that Judge has "made every effort to turn his life around and . . . [has] an exciting business opportunity." Reply Br. at 4. The district court is required to consider each argument, not to carve out and separately analyze each supporting statement. *See Vonner*, 516 F.3d at 387. Accordingly, the district court sufficiently considered the employment argument, including the two subarguments that Judge points to on appeal. Further, the question here is whether the district court "*plainly* violated its duty to analyze the relevant sentencing factors and [Judge's] arguments for leniency," *id*. at 388, and Judge's asserted error relies on a far-too-microscopic view of the mitigating arguments that he made at sentencing to qualify as "plain."

Similarly, three of the six allegedly unanswered arguments were part of Judge's argument that he remained clean while the charges were pending. Both in his motion for a departure or variance and at the sentencing hearing, Judge noted, with no particular emphasis, that he had been clean and crime-free while on bond. On appeal, he attempts to parse that argument into three different arguments, at least one of which was not at all made at sentencing, and he argues that the district court erred by failing to respond to each of the three. Specifically, Judge faults the court for not responding to his

---

[4]In his reply brief, Judge enumerates six arguments that the district court allegedly ignored, but he also discusses a remorse argument, which was not clearly among those enumerated.

argument that, because two years is an unusually long time to be out on bond, his good behavior while the charges were pending is somehow more indicative of his true behavior than in an ordinary situation. Perhaps this argument could have some merit, but fatal to it here is the simple fact that Judge never made it before the district court. At the sentencing hearing, Judge noted that he had been clean for the "extended period of time this case has been ongoing," but made absolutely no argument as to the significance of that fact. Judge also presents as two distinct arguments, first, that he remained drug-free, and second, that he presents no risk to the public. However, the second argument, which was included in passing in the first of Judge's two pre-hearing motions, was made in the exact same context as the first. In any case, the court adequately acknowledged both by noting that Judge ended his criminal conduct on his own, expressing its belief that Judge sincerely wants to be a successful, law-abiding citizen, and requesting that Judge be sent to a facility with a substance-abuse program. Under our limited standard of review, and accounting for the conceptual simplicity of the argument at issue, that response was sufficient. *See United States v. Greer*, 359 F. App'x 642, 646 (6th Cir. 2010).

Judge also argues that the district court failed to consider his argument that he was remorseful, but the record reflects otherwise. However, the district court granted Judge a three-point downward adjustment for his sincere acceptance of responsibility, which indicates that the court did, in fact, consider the argument. *See United States v. Castillo-Garcia*, 205 F.3d 887, 889 (6th Cir. 2000) (holding that remorse is a consideration when determining whether a defendant merits an adjustment under USSG §3E1.1). Accordingly, Judge cannot show plain error.

Finally, Judge contends that the district court failed to address his argument that he had no criminal history. Notably, Judge did not make any such argument at the sentencing hearing. Rather, he pulls the asserted argument from two sentences included in his first motion for a downward departure or variance, in which he stated, "Defendant has no prior criminal record whatsoever. This case represents Defendant's first and only criminal conviction." This mere statement of fact, which is amply stated in the PSR and

in the Guidelines range considered by the district court, does not include any *argument* for a departure or variance, or for any particular relief whatsoever.  Because this court has held that a sentencing court need not address "vague suggestion[s]" in favor of a lower sentence, *United States v. Dumas*, 361 F. App'x 646, 650 (6th Cir. 2010), and because Judge's asserted argument does not rise to even that minimal level of argument, the district court committed no error, let alone a plain error, by not responding in some way to Judge's fleeting reference to his lack of a criminal history.

Because the record reflects that the district court considered the core thrust of all of the arguments that Judge actually presented, we hold that the district court's explanation of its sentence was adequate.  To be sure, the court's explanation could have been fuller.  The court could have, for example, more explicitly considered each section 3553(a) factor, although that is a shortcoming that Judge does not assert as an error on appeal.  In any case, the court's explanation was sufficient and certainly not plain error.

III

A

Where a defendant has provided the government with substantial assistance in the prosecution of others, the government may move the sentencing court to reduce the defendant's sentence, either under section 5K1.1 of the Sentencing Guidelines or, after the defendant has been sentenced, under Rule 35(b) of the Federal Rules of Criminal Procedure.  In addition, decisions of this court have recently made clear that district courts may, at a *defendant's* request, grant variances at sentencing based on the defendant's substantial assistance to the government.  *Petrus*, 588 F.3d at 356; *Blue*, 557 F.3d at 682.

Although a district court has in effect multiple opportunities, both during and after sentencing, to reduce a defendant's sentence for providing substantial assistance, it is crucial that the court "maintain the temporal boundaries" of the various forms of requested relief and not consider the prospect of future relief when deciding whether the defendant currently merits relief.  *United States v. Recla*, 560 F.3d 539, 545 (6th Cir.

2009).  For example, when deciding a section 5K1.1 motion, a district court commits error by considering the possibility of future relief under Rule 35(b).  *United States v. Ridge*, 329 F.3d 535, 542–43 (6th Cir. 2003).  Although this court has not yet had the opportunity to apply this principle to motions made by defendants pursuant to *Petrus* and *Blue*, it follows from our existing case law that, when a district court considers a defendant's motion for relief in lieu of a section 5K1.1 motion from the government, it must evaluate the value of the defendant's assistance without regard to the possibility of future motions based upon future assistance.  However, the "mere mention of [a] possible future" motion for sentencing relief "will not invalidate the district court's ruling."  *Id*. at 542.  Rather, the relevant question is whether the court possibly gave Judge a longer sentence than it otherwise would have because it anticipated an opportunity to reduce his sentence in the future.  *See id*. at 543; *Recla*, 560 F.3d at 546.

Whether a district court's reliance on an impermissible factor is a procedural or a substantive error remains a disputed question of law in this circuit.  *United States v. Brown,* 417 F. App'x 488, 492 (6th Cir. 2011); *see Recla*, 560 F.3d at 544–45.  We do not resolve the ambiguity today, however, because whether the impermissible-factor argument is classified as substantive or procedural does not affect the result.  Although Judge made no relevant objection before the district court, his impermissible-factor argument is without merit even if analyzed as a substantive argument under the abuse-of-discretion standard of review.  Moreover, the government, in its brief, treated Judge's argument as substantive and analyzed it under the abuse-of-discretion standard.  We therefore assume, without deciding, that Judge's impermissible-factor argument is substantive in nature and that, even though Judge made no objection below, the abuse-of-discretion standard of review applies on appeal.

B

Although it is possible to interpret the district court's comments in a way that suggest that it based its sentence on the possibility of a future Rule 35(b) motion, the better interpretation is that the district court properly sentenced Judge based on its assessment of the cooperation he had provided as of the date of sentencing, without

regard for the possibility of future cooperation or motions.  The issue is at its core one of interpretation.  Did the district court determine that Judge had provided assistance that merits a 40% reduction, but only credited him 25% because it believed that the government would move for a greater reduction in the future?  That would have been improper.  Or, did the district court determine that Judge had commenced assistance that, *once completed*, will merit a 40% reduction, but, *at the time of sentencing*, the *incomplete* assistance merited only a 25% reduction?  That would have been proper.  Our reading of the record suggests that it was the latter.

Significantly, the district court found that Judge's cooperation was not yet complete.  Although the court stated that Judge's assistance was "consistent" with that of defendants who were granted a 30-to-40-percent sentence reduction, the court agreed with the government that the investigations were ongoing, so the extent of Judge's assistance could not be valued as though the investigations were complete.  Accordingly, the court granted Judge a 25% reduction, which is best interpreted as the court's estimate of the value of the assistance that Judge had provided up to that point.  This was a reasonable assessment.  The district court could have, for example, simply denied Judge's request altogether if it had completely agreed with the government and concluded that it was too early to determine whether *any* of Judge's assistance would turn out to have value.  *See United States v. Rosenbaum*, 585 F.3d 259, 265–66 (6th Cir. 2009).

To be sure, the district court would have erred had it given Judge a higher sentence than he merited at the time of sentencing because of the possibility of future cooperation and a future Rule 35(b) motion.  But the record does not clearly reflect that the district court committed such an error.[5]  The district court's reference to the fact that Judge's assistance was incomplete was the reason that, while it was "consistent with" assistance that merited greater reductions, it was not the same as the completed assistance provided in those cases and therefore did not merit the same reduction.

---

[5]Indeed, the district court never even mentioned the possibility of a Rule 35(b) motion, which distinguishes this case from *Recla*, upon which Judge relies.  *See Recla*, 560 F.3d at 546–47.

Perhaps Judge will continue to cooperate with the government, and once he is finished, the government will file a Rule 35(b) motion to credit him for the post-sentencing cooperation. Perhaps not. In any case, as we interpret the record, we conclude that the district court did not take into account those future possibilities when determining Judge's sentence.

IV

For the foregoing reasons, we AFFIRM the sentence of the district court.